IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2001

**TONY WILLIS, ET AL. v. TENNESSEE
DEPARTMENT OF CORRECTION**

**Appeal from the Chancery Court for Davidson County
No. 99-3332-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-01397-COA-R3-CV - Filed June 5, 2002**

---

Petitioners, state inmates, filed the underlying *pro se* petition for common-law writ of certiorari to seek review of disciplinary sanctions imposed on them by the Tennessee Department of Correction for attempted escape. Petitioners alleged that their due process rights were violated because: (1) they were not given sufficient notice of the hearing; (2) their convictions were based upon information from a confidential informant; (3) they were denied the right to call witnesses, and; (4) they were denied access to exculpatory evidence. The trial court dismissed the suit for failure to state a claim. Because the petition failed to allege sanctions that imposed atypical and significant hardships beyond those ordinarily incident to prison life, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., joined. WILLIAM C. KOCH, JR., J., filed a dissenting opinion.

Edward Tharpe, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Terri L. Bernal, Assistant Attorney General; for the appellee, Tennessee Department of Correction.

**OPINION**

Edward Tharpe and Tony Willis are prisoners incarcerated by the Tennessee Department of Correction. Mr. Tharpe and Mr. Willis were convicted by the Turney Center Industrial Prison and Farm's prison disciplinary board for the disciplinary infraction of "attempted escape" after a pair of pliers was discovered taped to the bottom of a fan in the cell they shared. Each inmate was punished with punitive segregation, involuntary administrative segregation, and a five dollar ($5.00) fine.

After exhausting their administrative remedies by appealing the disciplinary board's decision to both the warden and the Commissioner of the Department of Correction, Mr. Willis and Mr. Tharpe filed a petition for common-law writ of certiorari seeking review of the decision of the disciplinary board. The Tennessee Department of Correction filed a motion to dismiss the suit for failure to state a claim upon which relief can be granted under Tenn. R. Civ. P. 12.02(6). The trial court granted the motion, on the grounds that the process provided to the petitioners to contest and defend against disciplinary sanctions was commensurate with the sanctions imposed upon them and, therefore, there was no violation of due process. Relying on *Sandin v. Conner*, 515 U.S. 472, 481-85, 115 S. Ct. 2293, 2299-301, 132 L. Ed. 2d 418, 428-31 (1995), the trial court determined that Mr. Tharpe and Mr. Willis had no protected liberty interests and, therefore, their due process claims were dismissed.

Mr. Tharpe and Mr. Willis timely filed a notice of appeal with this court.[1] On appeal, Mr. Tharpe alleges that his due process rights were violated by the procedures used in the disciplinary board proceedings. Because the petition failed to allege sanctions which were atypical or unexpected in the context of incarceration after criminal conviction, we affirm the decision of the trial court.

## I. Common-law Writ of Certiorari

Mr. Tharpe and Mr. Willis filed a petition for writ of certiorari in the Davidson County Chancery Court alleging, *inter alia*, due process violations in that they were not provided with adequate notice of the charges against them, prohibited from calling witnesses at their disciplinary board hearing, denied access to exculpatory evidence, and charged based on information from a confidential informant.

The common-law writ of certiorari is the proper procedural vehicle for a prisoner seeking review of a disciplinary board's action. *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Ct. App. 1994)). Under such a petition, a court's review of an administrative board's decision is limited to a determination of whether the board has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.

A common-law writ of certiorari is an extraordinary judicial remedy. *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999); *Fite v. Tennessee Bd. of Paroles*, 925 S.W.2d 543, 544 (Tenn. Ct. App. 1996). It is not available as a matter of right, *Boyce v. Williams*,

---

[1]The *pro se* brief was signed only by Mr. Tharpe, leading the Department to argue that Mr. Willis "presented no issues for review by this Court." Upon examination, it is apparent that the brief was filed only on behalf of Mr. Tharpe. Seemingly, Mr. Willis abandoned his appeal, although he was not notified of potential dismissal for failure to file a brief. The issues raised in the brief filed by Mr. Tharpe are the same issues as those raised by both Mr. Tharpe and Mr. Willis in their joint petition for writ of certiorari and their notice of appeal. Because we find Mr. Tharpe is not entitled to relief on those facts and issues, we need not determine whether Mr. Willis waived his right to relief. However, because we interpret the record as indicating Mr. Willis's abandonment of his appeal, some adjustment of the allocation of costs on appeal is made at the conclusion of this opinion.

215 Tenn. 704, 713-14, 389 S.W.2d 272, 277 (1965); *Yokley v. State of Tenn.*, 632 S.W.2d 123, 127 (Tenn. Ct. App. 1981), but rather is addressed to the trial court's discretion. *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000). Accordingly, decisions to grant or deny a common-law writ of certiorari are reviewed using the familiar "abuse of discretion" standard. *Robinson*, 13 S.W.3d at 364. Under this standard, a reviewing court should not reverse a trial court's discretionary decision unless it is based on a misapplication of controlling legal principles or a clearly erroneous assessment of the evidence, *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999), or unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the complaining party. *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999); *Douglas v. Estate of Robertson*, 876 S.W.2d 95, 97 (Tenn. 1994).

The scope of review under a common-law writ of certiorari is extremely limited. Courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Colum.*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metro Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996), or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't of Nashville*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). Rather, the writ permits the courts to examine the lower tribunal's decision to determine whether the tribunal exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *Daniels v. Traughber*, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998).

The writ itself is an order issued by a superior court to compel an inferior tribunal to send up its record for review. In order to warrant issuance of the writ, the petition must sufficiently allege that the inferior tribunal acted outside its jurisdiction, illegally, fraudulently, or arbitrarily. Because the petition merely seeks the filing of the record and judicial review of the proceedings and decision, a motion to dismiss the writ at this stage can only be granted if the petition fails to make any allegations which justify review of the record under the common-law writ of certiorari standards. In determining the sufficiency of the allegations, conclusory allegations will not entitle a petitioner to the writ, and "if the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review." *Powell*, 879 S.W.2d at 873.

Because the Department chose to respond to the petition by filing a motion to dismiss, and because the motion was granted before the writ was issued, the Department did not file the record of the disciplinary proceedings. We must review the dismissal of the petition under the standards applicable to dismissal under Tenn. R. Civ. P. 12.02(6). Such a motion tests only the legal sufficiency of the complaint, not the strength of the petitioner's proof. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to constitute a cause of action. *Id.* In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true. *Bell v. Icard, Merrill, Cullins, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). Our standard

of review on appeal from a trial court's ruling on a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

The petition does not allege that Mr. Willis and Mr. Tharpe were denied a hearing on the charges. To the contrary, in their petition, Mr. Willis and Mr. Tharpe alleged that they were given hearings before the disciplinary board on the charge of attempted escape. They alleged that "the facts at the hearing showed that a pair of 'pliers' were discovered in a fan in a cell that Willis shared with Tharpe." The reporting officer testified at the hearing as did the maintenance employee in whose tool belt the pliers were last seen. Mr. Tharpe also testified. The petition alleged that the petitioners were given a statement of the evidence and reasons for the board's decision, in a "Disciplinary Hearing Summary," which is not included in the record. Although they acknowledged receipt of the summary, they argued that the summary demonstrates that the finding of guilt was based on no actual evidence.

The petition also alleged that the notice given them of the charges was inadequate because it did not cite a specific provision of statute or departmental rule that they allegedly violated:

> Although Petitioners were charged for 'Attempted escape,' there was no specific statutory provision of Tennessee law or Tennessee Department of Correction (TDOC) Policy alleged or cited in the disciplinary reports in order to properly place Petitioners on notice of the specific provision of law or regulations they allegedly violated. Because of this, Petitioners were not provided with adequate notice against them.

The crux of the petitioners' argument was that the evidence was insufficient to support a finding of attempted escape because: (1) there was no evidence that the pliers were used in any way to create an escape route from their cell; (2) there was no evidence that established they took the pliers; and (3) the reporting officer relied on information from a confidential informant, apparently leading him to conduct the search. The petitioners alleged that they requested log books and the testimony of the control officer regarding the tracking of the pliers, but were denied access to such information, which, they argued, could have been exculpatory. With regard to the confidential informant, the complaint appears to be that the confidential informant's information led to the discovery of the pliers and the informant "had every motive to set Petitioners up with the pliers and then concoct the alleged 'attempted escape' story."

Thus, although the petitioners claimed due process violations, much of their argument is related to the sufficiency of the evidence against them. Mr. Tharpe simply contends that the presence of the pliers in a fan in his cell is not sufficient evidence to support a finding of "attempted escape." As explained above, under the common-law writ of certiorari, courts cannot inquire into the correctness of the disciplinary board's decision finding the petitioners guilty of attempted escape. To the extent the petitioners are asking this court to reweigh the sufficiency of the evidence presented to the board, we are not authorized to do so under the common-law writ of certiorari.

*Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987); *Hoover, Inc.*, 924 S.W.2d at 904. The writ is only justified if there is no material evidence in the record to support the finding of the lower tribunal. *Hoover, Inc.*, 924 S.W.2d at 904-05. Due process only requires that "some evidence" support the disciplinary board's decision. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356, 365 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.*, 472 U.S. at 455, 105 S. Ct. at 2774, 86 L. Ed. 2d at 366. Taking the facts alleged in the petition for writ of certiorari as true, we must conclude that there was some evidence presented to the board to support its determination of guilt.

However, with regard to the allegations that the disciplinary board's procedure denied the petitioners due process, such allegations are the equivalent of a claim that the board acted arbitrarily and illegally. *Davis v. Campbell*, No. 01-A-01-9712-CH-00755, 1998 Tenn. App. LEXIS 784, at *1 (Tenn. Ct. App. Nov. 25, 1998) (no Tenn. R. App. P. 11 application filed). The common-law writ of certiorari is the appropriate procedural tool available to correct the "essential illegality" of a denial of procedural rights guaranteed by the United States Constitution. *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 Tenn. App. LEXIS 847, at *17 (Tenn. Ct. App. July 26, 2001) (no Tenn. R. App. P. 11 application filed) (citing *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979)).

## II. Due Process

The Department's motion to dismiss takes the position that even if everything the petitioners alleged in their petition is true, they have still failed to state a claim for relief because they are not entitled to the due process protections they assert they were denied.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Consequently, a claim of denial of due process must be analyzed with a two-part inquiry: (1) whether the interest involved can be defined as "liberty" or "property" within the meaning of the Due Process Clause; and, if so (2) what process is due in the circumstances. *Board of Regents v. Roth*, 408 U.S. 564, 571-73, 92 S. Ct. 2701, 2706-07, 33 L. Ed. 2d 548, 557-59 (1972). Deprivation of an interest which is neither "liberty" nor "property" does not trigger the procedural safeguards of the Due Process Clause.

The United States Supreme Court has identified the minimum procedural requirements of prison disciplinary hearings that involve deprivation of a liberty interest. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 43 L. Ed. 2d 935 (1974), having found a liberty interest in accumulated good time credits created by state statute, the Court nonetheless held that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* 418 U.S. at 556, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S. Ct. 2593, 2603, 53 L. Ed. 2d 484, 498 (1972)). Recognizing that the unique requirements of prison life necessarily involve the loss by prisoners of

-5-

many rights afforded to unincarcerated citizens, the Court established the minimal constitutional requirements that must be met in prison disciplinary proceedings where a protected liberty interest is implicated. In such situations, a prisoner is minimally entitled to prior written notice of the charges, an opportunity to present witnesses when not hazardous to institutional safety and goals, an impartial decision maker, and a written statement as to the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66, 94 S. Ct. at 2978-80, 41 L. Ed. 2d at 955-57.

Without the implication of a liberty interest, however, even the minimal safeguards set out in *Wolff* are not required. *Sandin*, 515 U.S. at 483-84, 115 S. Ct. at 2300, 1321 L. Ed. 2d at 429 (holding that because no liberty interest existed in freedom from punitive segregation, the procedural requirements of *Wolff* did not apply); *Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) (concluding that where there was no liberty interest, there was no right to an impartial decisionmaker); *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981) (holding that a prisoner who was denied a pardon which would have made him eligible for parole had no liberty interest and, therefore, was not entitled to statement of the reasons for denial of the pardon).

The primary focus of the *Wolff* opinion was the second part of the two-part due process analysis: identifying the process that is due in a particular situation. The United States Supreme Court later recognized that the emphasis in *Wolff* was on the "balancing of prison management concerns with prisoners' liberty in determining the amount of process due" and not on the definition of liberty interests protected by the Due Process Clause. *Sandin*, 515 U.S. at 478, 115 S. Ct. at 2297, 132 L. Ed. 2d at 425-26. The discussion of liberty interests in *Wolff*, however, included a determination that the Due Process Clause itself did not create a liberty interest in accumulated credits for good behavior but that a state statute created such an interest in a shortened prison sentence because it made such credits revocable only if the prisoner was guilty of serious misconduct. *Wolff*, 418 U.S. at 557, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951.

Subsequent to *Wolff*, the Court took the opportunity to treat more fully the issue of protected liberty interests in the prison context. *Meachum v. Fano*, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). In *Meachum*, the Court considered whether transfer to a different prison with less favorable conditions could only be accomplished by procedure which complied with *Wolff*. The Court specifically rejected "the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause," citing *Roth* as an example of a situation where a loss of great substance occurred but was not constitutionally protected. *Meachum v. Fano*, 427 U.S. at 224, 96 S. Ct. at 2538, 49 L. Ed. 2d at 458. The Court continued:

> Similarly, we cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of a crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his

liberty to the extent that the State may confine him and subject him to the rules of its prison so long as the conditions of confinement do not otherwise violate the Constitution.

*Id.*

The court found that confinement within any of the State's prisons was "within the normal limits or range of custody which the conviction has authorized the State to impose." *Id.* 427 U.S. at 225, 96 S. Ct. at 2538, 49 L. Ed. 2d at 459. Consequently, there was no liberty interest arising from the Due Process Clause itself which compelled *Wolff's* procedural safeguards prior to a transfer.

In *Meachum*, as in *Wolff*, the Court recognized that states may create interests which trigger the procedural protections of the Due Process Clause, pointing out that the liberty interest in *Wolff* had its roots in state law.[2] *Meachum*, 427 U.S. at 226, 96 S. Ct. at 2539, 49 L. Ed. 2d at 460. For the next two decades, this state-law source of liberty interests was the basis of the Court's jurisprudence regarding due process in prison settings. The Supreme Court's methodology for determining whether a liberty interest existed involved combing state statutes and prison regulations for mandatory language or substantive prerequisites to the challenged action. *See, e.g., Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 464-65, 109 S. Ct. 1904, 1910-11, 104 L. Ed. 2d 506, 517-18 (1989) (holding that the wording of visitation rules did not create an expectation that prisoners could enforce them against prison officials, so no liberty interest was created and no procedures needed to accompany the suspension of visitation privileges); *Olim*, 461 U.S. at 249-51, 103 S. Ct. at 1747-48, 75 L. Ed. 2d at 822-24 (holding that discretionary wording in a regulation authorized the transfer of a prisoner without due process); *Board of Pardons v. Allen*, 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987) (holding that mandatory language in a parole statute triggered a liberty interest and, therefore, inmate was entitled to procedural protection);[3] *Dumschat*, 452 U.S. at 466, 101 S. Ct. at 2465, 69 L. Ed. 2d at 166 (holding that a statute which gave a board unlimited discretion did not create a liberty interest); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (holding that a state parole statute created a legitimate expectation of release, thus creating a liberty interest subject to due process protections).

The courts continued to struggle with determinations of whether state law created protected interests until, in 1995, the Supreme Court abandoned the prior language-driven methodology because that methodology had shifted the focus of the inquiry away from the nature of the

---

[2]In *Meachum*, the Court determined that state law gave prison officials discretion in the assignment of prisoners to particular prisons, gave prisoners no right to remain in a particular prison, and did not predicate transfer on misconduct or other specific events. Consequently, the Court found no state-created liberty interest.

[3]In *Sandin* the court later described the *Allen* holding as a triumph of form over substance, 515 U.S. at 484, 115 S. Ct. at 2300, 132 L. Ed. 2d at 430.

deprivation. *Sandin*, 515 U.S. at 480-82, 115 S. Ct. at 2298-99, 132 L. Ed. 2d at 426-28. Such analysis "strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id*. 515 U.S. at 483, 115 S. Ct. at 2300, 132 L. Ed. 2d at 429. In *Sandin*, the Court determined it was time to return "to the due process principles we believe were correctly established in *Wolff* and *Meachum*." *Id*.

While recognizing that states may, under certain circumstances, such as that presented in *Wolff*, create liberty interests, the Court found:

> But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. 515 U.S. at 484, 715 S. Ct. at 2300, 132 L. Ed. 2d at 429 (citations omitted).

Although the Court's shift in how it viewed state-created liberty interests in the prison context was the most significant holding of *Sandin*, the holdings of the Court that related to the scope of liberty interests created by the Due Process Clause are also relevant. That the Court intended to visit that issue is clear from its statement that *Sandin* presented the first opportunity for the Court to address the issue of whether disciplinary confinement of inmates itself implicates constitutional liberty interests. *Id*. 515 U.S. at 486, 115 S. Ct. at 2301, 132 L. Ed. 2d at 431-32. It had previously determined in *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 6757 (1983), that the Due Process Clause, standing alone, did not confer a liberty interest to avoid administrative segregation, by finding that there was no constitutional liberty interest in freedom from state action taken "within the sentence imposed." *Id*. 459 U.S. at 468, 103 S. Ct. at 869, 74 L. Ed. 2d at 685. In *Hewitt*, the Court recognized that prisoners retain only "the most basic liberty interests" and determined that remaining in the general population was not one of those basic interests. *Id*. 459 U.S. at 467-68, 103 S. Ct. at 869, 74 L. Ed. 2d at 685. The Court explained that because "inmates should reasonably anticipate receiving [administrative segregation] at some point in their incarceration," the Due Process Clause alone did not create a liberty interest. *Id*. 459 U.S. at 468, 103 S. Ct. at 869, 74 L. Ed. 2d at 685.

In *Sandin*, Mr. Conner was sanctioned for a disciplinary infraction by confinement in punitive segregation for thirty days. The Court found no substantive difference between the conditions of disciplinary segregation and the conditions of administrative segregation or protective custody. The Court concluded that because the prisoner's confinement "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction" the punitive segregation "did not work a major disruption in his environment." *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301, 132 L. Ed. 2d at 431. This analysis was part of the Court's return to examining the nature of the interest at stake, pursuant to its earlier holdings in *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) and *Meachum*, 427 U.S. at 224, 96 S. Ct. at 2538, 49 L. Ed. 2d at 459 (citing *Roth*, 408 U.S. at 570-71, 92 S. Ct. at 2705, 33 L. Ed. 2d at 556). Based on its findings that:

(1) Mr. Conner's disciplinary segregation did not present an atypical, significant deprivation and (2) the sanctions would not inevitably affect the duration of his sentence, the court held "Neither the Hawaii prison regulations, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*." *Sandin*, 515 U.S. at 487, 115 S. Ct. at 2302, 132 L. Ed. 2d at 432.[4]

It is clear from statements of dissenting justices in *Sandin* that the majority opinion held that the Due Process Clause of the United States Constitution provided no basis for assertions of due process violations in prison disciplinary proceedings that result in sanctions that are within the expected, ordinary deprivations incident to prison life.[5]  The Court reiterated its prior holdings that disciplinary actions that do not extend the duration of a prisoner's sentence and are within the original sentence do not trigger due process rights because they are generally to be expected in the context of prison life.

> The punishment of incarcerated prisoners . . . effectuates prison management and prisoner rehabilitative goals.  Admittedly, prisoners do not shed all constitutional rights at the prison gate, but "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.

*Id.* 515 U. S. at 485, 115 S. Ct. at 2301, 132 L. Ed. 2d at 430-31 (citations omitted).

---

[4]This opinion's discussion of *Sandin's* holding regarding liberty interests created by the constitution itself addresses the statements in the separate concurring opinion in *Franklin v. Tennessee Dept. of Corr.*, No. M2001-00279-COA-R3-CV, 2001 Tenn. App. LEXIS 839 (Tenn. Ct. App. Nov. 8, 2001) (no Tenn. R. App. P. 11 application filed) that *Sandin* addressed only state law created liberty interests and that prisoners are entitled to the minimum procedural requirements established in *Wolff* "regardless of whether they are facing punishment that is atypical and significant in relation to the ordinary aspects of prison life." *Id*. 2001 Tenn. App. LEXIS 839, at *22 (Koch J., concurring).

[5]Justice Ginsburg, in her dissent, stated, "Unlike the Court, I conclude that Conner had a liberty interest, protected by the Fourteenth Amendment's Due Process Clause, in avoiding the confinement he endured." *Sandin*, 515 U.S. at 488, 115 S. Ct. at 2302, 132 L. Ed. 2d at 433 (Ginsburg, J., dissenting).  Similarly, Justice Breyer's dissent makes it clear that he interpreted the majority opinion as ruling that Due Process protections did not apply to Mr. Conner's punishment as a constitutional matter.

> The specific question in this case is whether a particular punishment that, among other things, segregates an inmate from the general prison population for violating a disciplinary rule deprives the inmate of "liberty" within the terms of the Fourteenth Amendment's Due Process Clause.  The majority, asking whether that punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" concludes that it does not do so.

*Id*. 515 U.S. at 492, 115 S. Ct. at 2304, 132 L. Ed. 2d at 434 (Breyer, J., dissenting).

While the Court did not preclude the possibility of the Due Process Clause giving rise on its own to a protected liberty interest, it made it clear that those situations would be rare. In *Meachum*, the Court had stated that such an interest existed in avoiding punishment that went beyond the normal scope of that authorized by a criminal conviction. *Meachum*, 427 U.S. at 225, 96 S. Ct. at 2538, 49 L. Ed. 2d at 459. In *Sandin*, the court indicated that it had only found the Due Process Clause itself to have created a liberty interest in prisoners in two cases: *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (involving the transfer of a prisoner to a mental institution) and *Washington v. Harper*, 494 U.S. 213, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990) (involving the administration of psychotropic drugs to a prisoner). *Sandin*, 515 U.S. at 479 n.4, 115 S. Ct. at 2297 n.4, 132 L. Ed. 2d at 426 n.4. In *Vitek*, the Court's finding of a liberty interest originating in the Due Process Clause itself was based upon its conclusion that the transfer of a prisoner to a mental hospital was not "within the range of confinement justified by the imposition of a prison sentence" because the consequences of the transfer would result in conditions that were "qualitatively different" from the conditions of confinement in a penal institution expected after conviction. *Vitek*, 445 U.S. at 493-94, 100 S. Ct. at 1264, 63 L. Ed. 2d at 565. On the other hand, Mr. Conner's disciplinary segregation was not a "dramatic departure" from ordinary prison confinement and was within the expected parameters of a criminal sentence. *Sandin*, 515 U.S. at 485-86, 115 S. Ct. at 2301, 132 L. Ed. 2d at 430-31.

The United States Court of Appeals for the Sixth Circuit has found that, under *Sandin*, a prison disciplinary proceeding does not give rise to a protected Fourteenth Amendment liberty interest unless it affects the duration of the prisoner's confinement or the restrictions impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). An inmate "has no liberty interest in remaining free of disciplinary segregation because such segregation does not impose an atypical hardship . . . ." *McKinley v. Bowlen*, 8 Fed. App. 488, 492, 2001 U.S. App. LEXIS 8743, at \*6 (6th Cir. 2001) (citing *Sandin* and *Mackey*). Absent allegations of such an atypical hardship, a prisoner cannot sustain his claim. *Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998).

Thus, because "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537, 53 L. Ed. 2d 629, 638 (1977) (citing *Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 1060, 92 L. Ed. 1356, 1369 (1948)), the Due Process Clause itself does not give rise to a protected liberty interest in freedom from deprivations which are an expected part of incarceration after conviction. In particular, disciplinary segregation for brief periods[6] is within the expected parameters of such incarceration and does not implicate a constitutionally created liberty interest. A state-law-based liberty interest can only be created where the deprivation imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484, 715 S. Ct. at 2300, 132 L. Ed. 2d at 429. Absent those factors, no liberty interest exists and the

---

[6]In *Sandin*, the Supreme Court determined that thirty days was a brief period. *Sandin*, 515 U.S. at 483-85, 115 S. Ct. at 2300-01, 132 L. Ed. 2d at 429-31.

procedural requirements of Due Process do not apply.[7]  Absent allegations of those factors, in terms of the atypicality and significance of the deprivation due to duration or conditions, no claim of due process denial has been stated.

In the case before us, the petition simply alleged that the sanctions given to Mr. Tharpe as a result of the conviction for attempted escape included punitive segregation, involuntary administrative segregation, and a five dollar ($5.00) fine.[8]  There was no allegation as to the duration of the segregation, the conditions of segregated confinement, or the atypicality of either in comparison to the ordinary incidents of prison life.[9]  Because segregated confinement in and of itself does not present the type of atypical significant deprivation that triggers procedural protections, *Sandin*, 515 U.S. at 483-85, 115 S. Ct. at 2300-01, 132 L. Ed. 2d at 429-31, a claim based solely on an allegation of such confinement does not trigger an analysis of the procedural protections afforded. Without more, the petition fails to state a claim upon which relief can be granted.

## III.  State Law Cause of Action

The dissent herein states that our reliance on *Sandin* is misplaced.  While we certainly agree that *Sandin* was a § 1983 claim, we disagree that the *Sandin* holding is inapplicable herein.  *Sandin* defines the nature of the liberty interest to which due process attaches.  Consequently, it is relevant to an analysis of any claim of deprivation of constitutional due process in a prison disciplinary setting, regardless of the procedural vehicle used to bring that claim.  Herein, Mr. Tharpe claimed a deprivation of due process rights guaranteed to him by the United States Constitution.  In order to address the claim actually raised by the petitioners herein, it is necessary to discuss due process in the context of prison disciplinary proceedings.  Thus, reliance on *Sandin* seems, to us, unavoidable.

[7]The Second Circuit has adopted an approach that requires factual findings to determine the actual conditions of confinement in segregation or restrictive housing and the actual duration of that confinement as a prerequisite to determination of the legal question of whether the conditions and duration constitute an atypical and significant hardship.  In *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000), that court held that confinement of three hundred five days under standard segregated housing conditions in the prison at issue was a sufficient departure from the ordinary incidents of prison life to constitute an atypical hardship as a matter of law.  In *Colon*, the court recognized that it had previously held that a similar confinement of one hundred one days did not constitute an atypical and significant hardship in *Sealy v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999).  In *Colon*, however, the court reserved the possibility that upon a more fully developed record, confinement shorter than one hundred one days could be found to be atypical and significant. Thus, the Second Circuit's approach requires a fact specific inquiry to determine whether a liberty interest exists which triggers procedural protections.

[8]The Department did not offer any clarifying information about the duration of the segregation, but we note that TDOC Policy #502.02 on disciplinary punishment guidelines appears to set the maximum amount of punitive segregation available as a sanction for a disciplinary infraction at thirty days, absent other specified circumstances.

[9]The brief submitted by Mr. Tharpe on appeal, however, alleges that the sanctions have imposed atypical and significant hardships on him including segregation for an extended period and other consequences of the disciplinary infraction.  However, none of these allegations were presented to the trial court and, thus, are not before us.  This court can only consider such matters as were brought to the attention of the trial court.

-11-

We interpret the dissent as holding that failure to follow TDOC procedural policies can create a cause of action under the common-law writ of certiorari in certain circumstances,[10] even though due process is not implicated. The disciplinary policies are not required to be promulgated as rules under the Administrative Procedures Act, *Mandela*, 978 S.W.2d at 534, and thus can be changed by the Department alone.[11] "[T]he legislature has provided the TDOC considerable deference and broad discretionary powers to enable TDOC to manage its tremendous responsibilities. . . .This broad grant of legislative discretion necessarily includes the power to establish policies and procedures for handling disciplinary matters." *Id.* The dissent lists several TDOC policies which it finds Mr. Tharpe alleged were violated. Each of the specific policies, however, is grounded in procedural due process. *Sandin* precludes Mr. Tharpe from sustaining a due process claim, yet the dissent would find a cause of action based in a state statute establishing limited review of a lower tribunal's decision based upon the same allegations. We are unable to agree that such allegations support issuance of a writ of certiorari.

We agree with the dissent that the common-law writ of certiorari is available to contest decisions of lower tribunals, including administrative boards, on grounds other than constitutional violations, and have recently made that point in prison disciplinary board challenges. *See Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 Tenn. App. LEXIS 815, at *14-15 (Tenn. Ct. App. Nov. 2, 2001) (no Tenn. R. App. P. 11 application filed); *Livingston v. State*, No. M1999-0011138-COA-R3-CV, 2001 Tenn. App. LEXIS 475, at *9-13 (Tenn. Ct. App. July 5, 2001) (no Tenn. R. App. P. 11 application filed).

The statutory grounds for grant of the writ are "where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally." Tenn. Code Ann. § 27-8-101. Courts have long recognized grounds for grant of the writ "if the board has exceeded its jurisdiction, or has otherwise acted unlawfully, arbitrarily or fraudulently." *Blackmon,* 29 S.W.3d at 878; *Petition of Gant*, 937 S.W.2d 841, 844-45 (Tenn. 1996); *Powell*, 879 S.W.2d at 873; *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990).

An allegation of denial of due process, such as that made herein, or other constitutional violation, is an allegation that the board acted illegally. *Livingston*, 2001 Tenn. App. LEXIS 475, at *29; *Davis*, 1998 Tenn. App. LEXIS 784, at * 3-4; *Maney v. Tennessee Bd. of Paroles*, No. 01A01-9710-CV-00562, 1998 Tenn. App. LEXIS 727, at *6 (Tenn. Ct. App. Oct. 30, 1998) (no Tenn. R. App. P. 11 application filed); *Williams v. Tennessee Dept. of Corr.*, No. 02A01-9503-CV-00046, 1995 Tenn. App. LEXIS 640, at *4-5 (Tenn. Ct. App. Oct. 2, 1995) (no Tenn. R. App. P. 11 application filed).

---

[10]These circumstances are if the petitioner alleges that failure to follow TDOC disciplinary policies affected the disposition of the proceeding to the prisoner's prejudice.

[11]Where a liberty interest exists, such as where the sanction imposes an atypical and significant hardship, an inmate must be given due process. The procedural policies ensure such protection, but the minimal requirements established in *Wolff* must be met in such cases, with or without written policies guaranteeing them.

One of the other ways in which a board or commission may act illegally or arbitrarily is to make a decision without any material evidence to support the decision. *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983); *Hoover v. Metropolitan Bd. of Hous. App.*, 936 S.W.2d (Tenn. Ct. App. 1996); *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't. of Nashville and Davidson County*, 842 S.W.2d 611, 619 (Tenn. Ct. App. 1992). Absent some material evidence, the petitioner is entitled to relief under the common-law writ of certiorari. The requirement of some material evidence to support the decision of the lower tribunal has been treated analytically as (1) a test for "illegality," *see*, *e.g.*, *Hoover, Inc.*, 924 S.W.2d at 904-05 (determining that there is no material evidence to support the decision requires the reviewing the court to "conclude that the administrative body acted illegally"); (2) as a standard for "arbitrary" action, *see, e.g., South v. Tennessee Bd. of Paroles,* 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996) (stating that "One useful criterion for determining whether a decision can be considered to be arbitrary is whether or not it has a rational basis. Perhaps another might be whether it is supported by any substantial and material evidence in the record."); and (3) as a separate basis for grant of relief under the common-law writ of certiorari, s*ee, e.g.*, *Lions Head Homeowners' Ass'n. v. Metropolitan Bd. of Zoning App.*, 968 S.W.2d 296, 303 (Tenn. Ct. App. 1997) (holding that persons seeking relief under common-law writ of certiorari have the burden of demonstrating the board "exceeded its jurisdiction, acted illegally, arbitrarily, or without material evidence to support its decision"). While it is not necessary to precisely categorize the appropriate grounds for such a challenge, we think it is clear that a decision that is not based on some material evidence is subject to judicial review and reversal under the writ.[12]

However, any such judicial review is limited to finding some evidentiary basis, and "neither the trial court nor this court determines any disputed question of fact or weighs any evidence." *Gallatin Housing Auth. v. City Council*, 868 S.W.2d 278, 280 (Tenn. Ct. App. 1993). The Tennessee

[12]In *Wolff v. McDonnell*, the United States Supreme Court determined that one of the minimal constitutional requirements applicable to prison disciplinary proceedings is a written statement of the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66, 94 S. Ct. at 2978-80, 41 L .Ed. 2d at 955-57. In *Superintendent v. Hill*, the Court determined that "the minimum requirements of procedural due process," where due process attaches, include a requirement that the findings of a prison disciplinary board be supported by some evidence in the record. *Hill*, 472 U.S. at 454, 105 S. Ct. at 2773, 86 L. Ed. 2d at 364. The court established the standard that due process is met "if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* The Court, declining to adopt a more stringent evidentiary standard as a constitutional requirement, stated:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. . . .The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id*. As discussed earlier in this opinion, under *Sandin*, due process is not implicated by all actions taken by a prison disciplinary board, and we have determined that the deprivations alleged by Mr. Tharpe are not the type that trigger a due process analysis. Consequently, *Hill* does not directly apply either since it is premised on the existence of a protected liberty interest. Nonetheless, because a board's decision is subject to judicial review under state law upon a sufficiently definite allegation that no evidence supports the decision, the *Hill* standard provides some guidance on how the scope of such a review might be defined in the context of prison disciplinary boards.

Supreme Court has explained, "The scope of review under the common-law writ does not ordinarily extend to a redetermination of the facts found by the administrative body." *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Further:

> [T]he writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari . . . cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case.

*Hoover Motor Express Co. v. Railroad and Pub. Util. Comm'n*, 195 Tenn. 593, 601, 261 S.W.2d 233, 236 (citations omitted).[13]

Under the common-law writ, courts may examine a lower tribunal's decision in order to determine if it is arbitrary or capricious. As a general proposition, the decision of an administrative board is considered to be arbitrary if it lacks a rational basis. *Mobilcomm of Tenn. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993). In *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106 (Tenn. Ct. App. 1993), this court discussed the standard for determining whether a decision is arbitrary, stating that an agency decision, not supported by substantial and material evidence in the record, is arbitrary and capricious and, even where adequate evidence is found in the record, an agency's decision may still be arbitrary and capricious if caused by a clear error in judgment or if the decision disregards the facts or circumstances of the case without some basis. *Id.* at 110-11 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 441, 42 L. Ed. 2d 447, 455 (1974)).[14] Further, arbitrariness conveys the sense that a decision is not based on any course of reasoning or exercise of judgment, but is based solely on one's will. *State ex rel. Nixon v. McCanless*, 176 Tenn. 352, 354, 141 S.W.2d 885, 886 (1940). Arbitrary has also been characterized as "without fair, solid, and substantial cause; and without reason given," *Waller v. Skelton*, 186 Tenn. 433, 445, 211 S.W.2d 445, 450 (1948), and "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case, or the result of an unconsidered willful and irrational choice of conduct." *Wright v. Tennessee Bd. of Dispensing Opticians*, 759 S.W.2d 929, 932 (Tenn. Ct. App. 1988); *see also Cupp v. Kimsey*, No.

---

[13]As discussed earlier in this opinion, Mr. Tharpe's arguments are largely a disagreement with the conclusion reached by the disciplinary board that he committed the offense of attempted escape. His petition and the documents that he submitted therewith show that a pair of pliers was found in his cell. He asserts that someone else could have planted the pliers to frame him and his cellmate. He testified at the hearing. We interpret his argument as asking the court to reassess all of the evidence at the hearing, weigh it, and determine that the presence of the pliers hidden in his cell was not sufficient. We think we are precluded from making such an evaluation.

[14]In that case, and in others cited herein, the court was applying the 'arbitrary and capricious' standard found in the Administrative Procedures Act, Tenn. Code Ann. §4-5-322. While the definitions of arbitrary and capricious under the APA standard for judicial review have applicability to the same standard under the common-law writ of certiorari, we must still be guided by the limitations inherent in the supervisory, rather than appellate, nature of a reviewing court's role in a certiorari proceeding.

03A01-9810-CH-00320, 1999 Tenn. App. LEXIS 793, at *5-6 (Tenn. Ct. App. Nov. 30, 1999) (no Tenn. R. App. P. 11 application filed); *ABC Home Health of Tenn., Inc. v. Tennessee Health Facilities Comm'n*, No. 01A01-9302-CH-00065, 1993 Tenn. App. LEXIS 561, at *22-23 (Tenn. Ct. App. Aug. 20, 1993) (Koch, J., dissenting) (petition to rehear denied Sept. 22, 1993).

There is authority stating that another basis for grant of the writ is that the board or commission followed unlawful procedure. *See, e.g.*, *Brooks v. Fisher*, 705 S.W.2d 135, 136 (Tenn. Ct. App. 1985). In *Brooks*, however, the court's holding was based upon a finding that the board's decision exceeded its authority because the decision was based upon criteria not authorized to be considered in the zoning ordinance. Thus, the problem was with the substance of the board's decision and the substance of the ordinance. "We find nothing in the ordinance before us which would make this a criterion for the board to consider." *Id*. at 138. Similarly, in *Hoover, Inc. v. Metro Bd. of Zoning App.*, this court's holding was that the board members "acted illegally, arbitrarily, or fraudulently because they constructively denied the permit despite their beliefs that Hoover had fulfilled the zoning requirements." 924 S.W.2d at 906. While the court discussed a zoning regulation, it was for the purpose of determining the effect of an abstention; that is, that it was the same as voting for the prevailing side. *Id.* Relief was not granted in either of these cases on the basis of failure to follow procedural requirements established by regulation. Neither involved discussion of the "unlawful procedure" ground.

The "unlawful procedure" language was inserted into the list of grounds for issuance of the writ in *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 277 (Tenn. 1980). *Watts* is often quoted and cited as authority for the grounds for judicial review under the common-law writ. *Watts*, however, did not involve an allegation of procedural irregularity in the board's conduct. Instead, the opinion deals with the petitioner's First Amendment claim and is based on the holding that there was material and substantial evidence to support the board's decision. *Id*. Similarly, the opinion in *Lafferty v. City of Winchester*, 46 S.W.3d 752 (Tenn. Ct. App. 2000) (also cited by the dissent) contains the "unlawful procedure" language in the usual list of grounds, but the holding is unrelated to any allegation of procedural irregularity. Again, the holding was based upon a finding of material evidence to support the zoning board's decision. *Id*. at 760. Finally, *Nevills v. South Cent. Corr. Disciplinary Bd.*, M2000-02324-COA-R3-CV, 2001 Tenn. App. LEXIS 714 (Tenn. Ct. App. Sept. 25, 2001) (no Tenn. R. App. P. 11 application filed) (also cited by the dissent), was an appeal from denial of a writ of certiorari to review a prison disciplinary board decision. Although the opinion quotes the *Watts* language listing grounds for judicial review under the writ, it does not address the "unlawful procedure" ground. The actual claim for relief in *Nevills* was an allegation of denial of due process. This court affirmed dismissal of that claim based upon *Sandin*.

Thus, while we do not disagree that board action taken upon "unlawful procedure" may provide a basis for judicial review and relief, we do not agree and find no precedent for a determination that failure to follow procedures established by internal policies applicable to prison discipline constitutes such unlawful procedure. While it is clear that procedural defects amounting to a denial of due process are correctable by writ of certiorari, *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979), it is not clear what procedural irregularities short of such constitutional

-15-

violation provide a separate state cause of action.[15] In the prison disciplinary context, however, state-created procedural rules or policies do not create a liberty interest from the expectation they will be followed. As the United States Supreme Court has stated:

> By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. Courts have, in response, and not altogether illogically, drawn negative inferences from mandatory language in the text of prison regulations. . . .
>
> Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights on inmates, but the result of the negative implication jurisprudence is not to require the prison officials to follow the negative implication drawn from the regulation, but is instead to attach procedural protections that may be of quite a different nature.

*Sandin*, 515 U.S. at 481, 115 S. Ct. at 2299, 132 L. Ed. 2d at 428.

The dissent would return us to reviewing internal procedural policies to determine if failure to follow to the letter a particular procedure constituted "unlawful procedure," where the only basis for an allegation the procedure was unlawful is the policy itself.[16] We simply disagree that the

---

[15]Failure to follow enabling legislation, for example, may constitute unlawful procedure, but may also result in action taken beyond the authority of the board. In contexts other than prison disciplinary proceedings, statutes may create property interests to which due process protections attach. The *Sandin* holding does not implicate the methodology for determining the existence of such interests. Where a protected interest exists, procedural due process is required regardless of the particular requirements of a procedural rule.

[16]The United States Supreme Court has abandoned its prior jurisprudence which involved combing through various state statutes and regulations to determine if they, by their language, created a liberty interest protected by the Due Process Clause. The Court explained the fundamental flaw in this methodology was that it no longer properly focused on the grievousness of the loss suffered or the nature of the interest actually at stake. The Court also pointed out problems, or undesirable effects, caused by its prior methodology: "First, it created disincentives for States to codify prison management procedures in the interest of uniform treatment. . . . States may avoid creation of 'liberty' interests by having scarcely any regulations, or by conferring standardless discretion on correctional personnel." The second undesirable result was the increased

> involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone. In so doing, it has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.

(continued...)

-16-

common-law writ of certiorari is available in such circumstances. This court has recently addressed the question of whether an allegation that procedures used in a prison disciplinary proceeding did not comply with TDOC policies states a claim under the common-law writ of certiorari[17] and determined that the test is whether the essential requirements of the law have been met. We stated:

> This court has held that the common-law writ of certiorari is available to correct the "essential illegality" of a denial of procedural rights guaranteed by the federal and state constitutions. *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979). . . . [A] writ of certiorari "provides a vehicle for a court to remove a case from a lower tribunal to determine whether there has been a failure to proceed according to the essential requirements of the law." *Clark v. Metropolitan Gov't of Nashville and Davidson Co.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991) (concurring opinion) (citing *Gallatin Beer Regulation Comm'n v. Ogle*, 185 Tenn. 482, 206 S.W.2d 891, 893 (1948)). Thus, an allegation of illegality sufficient to support judicial review of the board's decision must involve a failure to follow "essential requirements of the law."

> . . . .

> We do not consider these allegations [made by petitioner in *Ahkeen*] of failure to follow internal TDOC procedures to amount to allegations that the disciplinary board did not follow the essential requirements of the law. In the context of prison disciplinary proceedings, both the Tennessee Supreme Court and the United States Supreme Court have recognized the broad discretion necessary to allow prison officials to perform their responsibilities and, in shaping the law in this area, have also taken into consideration the realities of life in prison. Courts have recognized that lawfully convicted prisoners may be subjected to disciplinary proceedings which do not ensure "a full panoply of rights." *Wolff*, 418 U.S. at 540, 94 S. Ct. at 2967. A prisoner's interest in sanctions which may be imposed pursuant to such proceedings is a liberty or property interest, and that interest does not extend to sanctions which do not "impose atypical and significant hardship" beyond the ordinary incidents of prison life. *Sandin*, 115 S. Ct. at 2295. Therefore, we conclude that the "essential requirements of the law" in this area are those established by the due process clause. Where the Tennessee legislature has not imposed more stringent requirements on prison disciplinary procedures, we decline to do so. Without a constitutional or statutory "essential requirement", the writ of certiorari procedure does not authorize courts to create one. Therefore, a failure to sufficiently allege a due process violation

---

[16](...continued)
*Sandin*, 515 U.S. at 481-83, 115 S. Ct. at 2299, 132 L. Ed. 2d 418 at 428-29.

[17]In *Ahkeen*, the petitioner actually maintained that by failing to follow TDOC disciplinary policies, the board acted illegally, regardless of whether its actions also amounted to a deprivation of constitutional due process.

in the conduct of prison disciplinary proceedings is also a failure to allege, under common-law writ of certiorari grounds, that a disciplinary board has acted illegally by not following the essential requirements of the law. Accordingly, allegations that the board acted illegally by failing to follow TDOC procedures do not, in and of themselves, support issuance of a writ of certiorari to review the legality of the board's decision.

*Ahkeen*, 2001 Tenn. App. LEXIS 815, at *13-22.

We are not convinced that a failure to follow a procedural policy constitutes a failure to comply with the essential requirements of the law and adhere to our earlier holding in *Ahkeen*.

### IV. Conclusion

We affirm the trial court's determination that the petition failed to state a claim that Mr. Tharpe was deprived of due process rights and, therefore, failed to allege that the disciplinary board acted illegally or arbitrarily. Therefore, we affirm the trial court's dismissal of the petition for failure to state a claim under the common-law writ of certiorari. Costs of this appeal are taxed to the appellants, Edward Tharpe and Tony Willis.[18]

_____
PATRICIA J. COTTRELL, JUDGE

---

[18]Mr. Willis is taxed with one half (½) of the costs accrued prior to the filing of Mr. Tharpe's brief. Mr. Tharpe is taxed with the remainder of the costs. Mr. Willis abandoned his appeal, and it is therefore dismissed.