# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

March 13, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

BOBBY BLACKMON,                )
                              )
    Petitioner/Appellant,     )
                              )   Appeal No.
                              )   M1998-00887-COA-R3-CV
VS.                           )
                              )   Davidson Chancery
                              )   No. 98-1355-I
TENNESSEE BOARD OF            )
PAROLES, et al.,              )
                              )
    Respondents/Appellees.    )


## APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


BOBBY BLACKMON, #68314
Northwest Correctional Complex, Site II
Route 1, Box 660
Tiptonville, Tennessee 38079
    Pro Se/Petitioner/Appellant

PAUL G. SUMMERS
Attorney General and Reporter

MARK A. HUDSON
Senior Counsel
425 Fifth Avenue North
Nashville, Tennessee 37243-0488
    Attorney for Respondents/Appellees


### AFFIRMED AND REMANDED


BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# **O P I N I O N**

A paroled prisoner who was returned to prison after being arrested on a drug charge petitioned the chancery court for a writ of certiorari. He claimed that the Board of Paroles violated his due process rights by not conducting a timely parole revocation hearing. The trial court dismissed the petition. We affirm the trial court.

## **I.**

Bobby Blackmon was convicted of felony murder and armed robbery in 1970. He received a life sentence on the murder conviction and a concurrent ten year sentence for the armed robbery. In 1973, he escaped from custody. In 1980, he was arrested in California for armed robbery, and received a four year sentence. He was imprisoned there until 1983, when he was extradited to Tennessee to be tried for his 1973 escape. After being convicted on that charge, he was sentenced to two to five years.

Mr. Blackmon was paroled from his life sentence on November 6, 1989. However, on March 22, 1993, he was arrested in Sumner County for facilitation in the sale of $19,000 worth of cocaine. Judge Jane Wheatcraft of the General Sessions Court presided over the preliminary hearing on the charge as well as over bond hearings. Although Mr. Blackmon was initially released on a $25,000 bond, he was returned to custody after his bond was raised to $250,000. His attorney subsequently requested another bond hearing, and was

informed that Mr. Blackmon was subject to a parole violation warrant, which was not bondable.

On April 7, 1993, Mr. Blackmon was served by the Board of Paroles with a document titled "Notice of Charges and Explanation of Rights." The document explained the two hearings that are a normal part of parole revocation proceedings, and stated that "[y]ou also have the option to waive or postpone either hearing. You may later cancel the postponement/waiver by writing the Parole Board and requesting a hearing." The rights enumerated in the Notice are:

1. The right to prior notification of the charges against you and prior notice of the date, place, and time of the hearing.

2. The right to remain silent, and not offer testimony which could be used against you in court.

3. The right to present witnesses and documents in your own behalf.

4. The right to speak in your own behalf.

5. The right to question witnesses that testify and/or present evidence against you.

6. The right to retain counsel and have such counsel present at your hearing to assist you.

7. The right to have an attorney appointed to represent you. (This is a limited right and the hearing official will evaluate your case and decide if counsel will be appointed).

A preliminary revocation hearing was scheduled for April 26, but was continued at Mr. Blackmon's request. The hearing was finally conducted on October 7, 1993, during which probable cause to revoke parole was found. According to the affidavit of Randy Gibson, Mr. Blackmon's parole officer, Mr.

Blackmon requested that the final revocation hearing be postponed until the new charges against him were adjudicated. On February 13, 1995, a Sumner County jury found Mr. Blackmon guilty of Possession of a Schedule II Controlled Substance for Resale, a Class B Felony. Judge Wheatcraft presided over the trial.

However, the story does not end there. Judge Wheatcraft granted Mr. Blackmon's motion for a new trial, on the ground that it was a violation of the Tennessee Constitution for the same judge to preside over both a defendant's preliminary hearing and his criminal trial. On the State's appeal, the Court of Criminal Appeals reversed the award of a new trial, and reinstated the conviction. The defendant then petitioned the Tennessee Supreme Court for permission to appeal. The petition was granted, and the Supreme Court reversed the Court of Criminal Appeals in *State v. Blackmon*, 984 S.W.2d 589 (1998). Mr. Gibson stated that he asked Mr. Blackmon numerous times during the appeals process if he wanted a hearing, and was told that he did not.

On April 30, 1998, Mr. Blackmon filed a Petition for Writ of Certiorari in the Chancery Court of Davidson County. He claimed that since the Board of Paroles had never granted him a parole revocation hearing, he was being held illegally, and was entitled to release. He stated that "[i]t has now been five years since my arrest and no parole revocation hearing has been held and there has been no final valid judgment of conviction nor have there been any technical violations to warrant petitioners (sic) being continually incarcerated."

The chancery court did not address Mr. Blackmon's drug conviction, but dismissed his petition, finding that "the evidence indicates that the hearing officer made several attempts to set a hearing date for the petitioner and the petitioner refused every proposal." The court noted that Tenn. Code. Ann. § 41-21-804(b) authorized it to dismiss an inmate's claim if it found it to be frivolous or malicious, and ruled that Mr. Blackmon was not denied his right to a parole revocation hearing within a reasonable time. This appeal followed.

## II. Due Process in Parole Revocation

In the case of *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court declared that a parolee threatened with revocation of his parole possesses a constitutionally protected liberty interest, and outlined the requirements of the due process needed to protect that interest.

The court observed that the full panoply of rights to which a defendant in a criminal proceeding is entitled does not apply to a parole revocation, because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." 408 U.S. at 480. Since this is so, the court does not insist on strict adherence to any fixed set of procedures, but states that revocation of parole "calls for some orderly process, however informal."

The Court envisioned a process typically involving two stages. The first stage is a preliminary hearing to determine whether there is probable cause to believe that the parolee has violated his parole conditions. If probable cause has been found, then the second stage is a final hearing to evaluate any contested facts, and to determine whether those facts warrant revocation.

While the court sets out minimum due process requirements for both hearings, it is careful to warn us again that we cannot equate them with criminal prosecutions, and it again characterizes the required procedures as "informal."

The Tennessee Board of Paroles has created a set of rules for parole revocation that are consistent with the requirements of *Morrissey v. Brewer*, supra. Of particular interest in the context of the hearing that Mr. Blackmon claims that he has been denied is Tenn. Rules & Regs 1100-1-1-.13(9)(f) which states that proof that the parolee violated the terms of his parole need only be established by the preponderance of the evidence.

The rules also state that the Board sets the day, time and location of any final revocation hearing. Tenn. Rules & Regs 1100-1-1-.13(7). It may continue the hearing on its own motion to secure any evidence it requires, or to secure counsel to represent the parolee. Tenn Rules & Regs 1100-1-1-.13(8)(b). The parolee himself may request a postponement of the hearing by making that request in writing. Tenn. Rules & Regs 1100-1-1-.13(8)(c)

### III. Certiorari

While it is somewhat difficult to understand Mr. Blackmon's arguments because of the way he sets them out in his petition and his briefs on appeal, it is not difficult to understand his situation. It is apparent that if the Board holds a final revocation hearing and finds that he violated the terms of his parole, he may have to serve out the rest of his life sentence in custody. He thus has every reason to want to avoid the final hearing. But since he is already in custody, he hopes to use the non-occurrence of such a hearing as a vehicle for release.

If we understand Mr. Blackmon correctly, he is actually making two due process arguments: that he was not served with the parole violation warrant, and that he did not receive a timely final parole revocation hearing. We note that the Notice of Charges and Explanation of Rights that Mr. Blackmon received on April 7, 1993 indicates that a parole violation warrant had been served on him on March 26, 1993.

But even if the warrant had not been served, Mr. Blackmon does not deny that he received the notice of April 7, and that he has been informed of the charges against him. It thus appears to us that the sole detriment Mr. Blackmon would have suffered from an unserved warrant would have been the opportunity for bail prior to April 7. Of course in light of Mr. Blackmon's prior criminal history, including his 1973 escape, it is highly unlikely that the judge would have seen fit to lower his bail.

As for the revocation hearing, Mr. Blackmon argues that the record does not support the trial court's conclusion that "the evidence indicates that the hearing officer made several attempts to set a hearing date for the petitioner and the petitioner refused every proposal." He notes that the Rules of the Board of Paroles, Tenn. Rules & Regs 1100-1-1-.13(8)(c), allow a parolee to request a postponement of his final revocation hearing by submitting a request in writing, but that no such written request is found in the record.

However, Mr. Blackmon does not deny that he asked the Board for such a postponement; he merely insists that he did not put the request in writing. It appears to us that this is just the sort of argument the Supreme Court was trying to forestall by emphasizing the informal nature of the parole revocation process.

While Mr. Blackmon complains that the Board did not schedule a timely hearing, we see nothing in his brief or in the record to indicate that he ever asked for one after they accommodated his request to postpone the hearing, pending the resolution of the drug charges against him. It thus appears that he waived any entitlement to a hearing by any particular date.

As our courts have often stated, the scope of review under an action for writ of certiorari is narrow. *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981). The writ may only be granted if the board has exceeded its jurisdiction, or has otherwise acted unlawfully, arbitrarily or fraudulently. *Powell v. Parole Eligibility Review Board.* 879 S.W.2d 871 (Tenn. Ct. App. 1994). The writ is an

-8-

extraordinary remedy. *Foster v. First National Bank*, 430 S.W.2d 450 (Tenn. 1968). It is not granted as of right, but its grant or denial is always within the sound discretion of the trial court.

In view of Mr. Blackmon's actions during the period under discussion, we see nothing in the record to indicate that the Board acted unlawfully, arbitrarily or fraudulently in declining to schedule a parole revocation hearing, and we accordingly affirm the trial court. However, it also appears to us that Mr. Blackmon is still entitled to a hearing, and that the Board of Paroles would be well-advised to schedule one in order to resolve any doubts about whether or not his parole should be revoked.

We must briefly address one other argument that Mr. Blackmon raises on appeal. He contends that the trial court erred in dismissing his petition as malicious or frivolous under Tenn. Code. Ann. § 41-21-804(b). Mr. Blackmon reasons that the application of the statute to him is a violation of the ex post facto provision. He notes that the statute in question did not become law until 1996, and he claims the protection of the Criminal Sentencing Reform Acts of 1982 and 1989, which state that "[f]or all persons who committed crimes prior to July 1, 1982 prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation."

This is an ingenious argument, but as we stated above, the grant of a writ of certiorari is within the sound discretion of the trial court. Thus, even

if the trial judge erred in applying Tenn. Code. Ann. § 41-21-804(b) to Mr. Blackmon's petition, he acted within his discretion in dismissing it.

## IV.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WILLIAM B. CAIN, JUDGE