IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

# ERIC T. WOODRUFF v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 00-2406-II     Carol McCoy, Chancellor**

**No. M2001-00494-COA-R3-CV - Filed August 28, 2002**

Petitioner, an inmate in the custody of the Tennessee Department of Correction, filed the underlying *pro se* petition for common law writ of certiorari, seeking review of a prison disciplinary board decision and resulting sanctions that he alleges were made in violation of his constitutional rights to due process and equal protection under the laws. Specifically, Petitioner alleges that the disciplinary board violated Department policies by not providing the Petitioner with an adequate statement of reasons prior to his placement in administrative segregation. The trial court dismissed the suit for failure to state a claim. We affirm in part, reverse in part, and remand the case to the trial court with the direction that the trial court issue the writ.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Eric Woodruff, Only, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Stephanie R. Reevers, Associate Deputy Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

Eric Woodruff is an inmate who seeks review of actions taken against him by the prison disciplinary board ("the board") at Riverbend Maximum Security Institution in Nashville.

## I. Facts

According to the disciplinary reports filed by Mr. Woodruff as exhibits to his petition for common law writ of certiorari, Mr. Woodruff was cited with possession of contraband and interference with officers' duties. Mr. Woodruff was placed in administrative segregation pending the disciplinary board hearing on the charges, pursuant to TDOC policy. After continuances requested by Mr. Woodruff, the board ultimately found Mr. Woodruff guilty on both charges and sentenced him to twenty (20) days of punitive segregation and a $4.00 fine on the possession of contraband charge. As a result of interfering with officers' duties, the board fined Mr. Woodruff $4.00 and recommended to the warden that Mr. Woodruff be placed in involuntary administrative segregation. Mr. Woodruff received credit for time served in pre-hearing segregation on the punitive segregation sentence and was ultimately placed in involuntary administrative segregation.

Mr. Woodruff appealed the decision of the board to the warden, who denied the appeal. He then filed a petition for common law writ of certiorari in the Davidson County Chancery Court, alleging that the board: (1) failed to state the reason for his placement in administrative segregation; (2) illegally, fraudulently, and arbitrarily placed him in administrative segregation; and (3) subjected him to harsher punishment than that accorded to similarly situated inmates. Mr. Woodruff alleged that the actions of the board violated both his due process and equal protection rights. The Department filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim.

Relying on *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the trial court granted the Department's motion to dismiss stating: "Petitioner has not alleged that he received punishment such as would constitute an 'atypical and significant hardship' in relation to the ordinary incidents of prison life. Therefore he was not entitled to due process protections under the standards set forth in *Sandin*." The trial court dismissed Mr. Woodruff's equal protection claim because he had failed to set forth any facts alleging that other inmates accused of the same offenses were treated differently by the board. Mr. Woodruff filed a timely notice of appeal with this court.[1]

---

[1] The trial court dismissed the suit first as to the individually named warden and disciplinary board chairman, even though Mr. Woodruff had amended his pleadings to name only the Department, stating "the only proper party to this proceeding is the Tennessee Department of Correction." Although neither party addressed this issue on appeal, it is important to note that this court has held to the contrary. According to *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 Tenn. App. LEXIS 547, at *11 (Tenn. Ct. App. July 26, 2001) (rehearing denied Aug. 27, 2001) (no Tenn. T. App. P. 11 application filed), those officers and boards or commissions who have decision-making authority with regard to disciplinary proceedings are proper defendants under the common law writ of certiorari, including specifically the warden and disciplinary board members. In the case herein, the dismissal of the warden and the chairman of the board, however, did not result in the dismissal of Mr. Woodruff's petition, because the Department remained as a defendant. Therefore, we are able to fully address the merits of Mr. Woodruff's issues on appeal.

2

## II. Standard of Review

A Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of the petitioner's proof. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to constitute a cause of action. *Id.* In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true. *Bell v. Icard, Merrill, Cullins, Timm, Furen, and Ginsberg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). Our standard of review on appeal from a trial court's ruling on a motion to dismiss is *de novo* with no presumption of correctness as to the trial court's legal conclusions. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

The scope of our review is further limited by the procedural vehicle appropriately used to bring this claim, the common law writ of certiorari. *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Ct. App. 1994)) (holding that the proper procedural vehicle for a prisoner seeking review of a disciplinary action of the Department of Correction is by petition for common law writ of certiorari). A court's review of an administrative agency's decision is limited under a petition for common law writ of certiorari to a determination of whether the administrative body acted within its jurisdiction or acted arbitrarily, illegally, or capriciously. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Where a petitioner challenges the correctness of the decision of the board or other decision-maker, the common law writ does not provide a remedy. *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981) (stating that "[t]he common law writ of certiorari is not available to test the intrinsic correctness of the law or facts of particular case").

In the case before us, the petition for writ of certiorari was met with a motion to dismiss, pursuant to Tenn. R. Civ. P. 12.02(6), for failure to state a claim upon which relief can be granted. A motion to dismiss the petition at this stage can only be granted if the petition fails to make any allegations which justify review of the record under the common law writ of certiorari standards because the petition merely seeks the filing of the record and judicial review of the proceedings and decision. Tenn. Code Ann. § 27-9-109. A petitioner cannot merely make blanket allegations that the administrative body acted "arbitrarily or capriciously" and be entitled to the writ. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review. *Powell*, 879 S.W.2d at 873.

## III. Administrative Segregation

In his petition seeking judicial review of the action taken against him, Mr. Woodruff alleged that he was denied due process because he was never given reasons for involuntary administrative segregation. He also asserted the involuntary administrative segregation was imposed in violation of TDOC policy. Mr. Woodruff is not appealing the imposition of punitive segregation. Mr.

Woodruff alleges that the hearing summary completed by the board failed to state the reason for administrative segregation and that the Warden himself never gave an adequate reason for administrative segregation in violation of TDOC policy. He argues on appeal that the trial court incorrectly failed to liberally construe the petition in his favor and to accept his allegations as true.

Mr. Woodruff attached the hearing summary that he complains states inadequate reasons for his administrative segregation placement to his petition for common law writ of certiorari.[2] That hearing summary, completed by the board chairperson, under the section for "findings of fact and specific evidence relied upon which supports the decision," states: " Corporal [illegible] states that while searching Woodruff an object/item was in his pocket. He refused to give the item to the officer. He pulled away and ran. He flushed the item." Under the section for "disposition and a statement of reasons which supports the decision," the summary states: "Guilty of interference with officer duties. Woodruff did not deny this . . . [illegible] . . . Woodruff states that this is not serious enough for A.S. [administrative segregation]."

Because the Department responded to the petition with a Tenn. R. Civ. P. 12.02(6) motion, and the trial court dismissed on the basis of that motion, we must assume, for purposes of the motion, that the facts asserted by Mr. Woodruff are true. *McClenahan v. Cooley*, 806 S.W.2d 767, 768 (Tenn. 1991). Mr. Woodruff's primary concern is that the board failed to state adequate reasons for the recommendation for placement in administrative segregation.

Because Mr. Woodruff challenges the absence or sufficiency of reasons for placing him in administrative segregation, the nature of such segregation and the available bases for its imposition must be considered. According to the Department's policies, administrative segregation is not punishment for a disciplinary offense. *Perry v. Campbell*, No. M1999-00943-COA-R3-CV, 2001 Tenn. App. LEXIS 31, at *6 (Tenn. Ct. App. Jan. 22, 2001) (no Tenn. R. App. P. 11 application filed) (stating that "Department of Correction regulations make clear that administrative segregation is a 'control mechanism,' not a disciplinary sanction"). In fact, it is treated separately from disciplinary procedures in those policies. TDOC Policy # 404.10(IV) states that administrative segregation is "the *non-punitive* segregation for control purposes of inmates who are believed to be a threat to the security of the institution, the welfare of staff, or to other inmates." (emphasis added). TDOC Policy # 404.10(VI)(A)(1) states:

> Administrative segregation . . . is provided as a means of control and management. This level of segregation is for inmates who, because of conditions surrounding their incarceration, are believed to pose serious risks to the security and good order of the institution or to the safety of other inmates, staff, or the community and therefore require custody and security at the highest level . . . .

---

[2]Mr. Woodruff attached two hearing summaries: one documenting the result of the contraband charge, and the other documenting the board's action on the interference with officer's duties charge. Because he only challenges his placement in administrative segregation, only the second summary is at issue.

An inmate may be placed in administrative segregation in one of several ways. The warden has the authority to place an inmate in administrative segregation when "it is believed that a condition exists requiring immediate placement in administrative segregation to maintain security of the institution or to protect the staff and/or other inmates." TDOC Policy # 404.10(VI)(A)(2). Additionally, a disciplinary board may recommend to the warden that an inmate be placed in administrative segregation after a hearing and disposal of a charge for a disciplinary rule infraction. The recommendation should be given to the warden "when it is believed that continued presence in the general population may present a threat to security, the staff, or other inmates." TDOC Policy # 404.10(VI)(A)(3). The procedure that the board must follow in making a recommendation to the warden for administrative segregation includes the following:

> a. The inmate shall be verbally advised by the board of its recommendation and be afforded the opportunity to present a statement during the hearing.
>
> b. The board shall clearly state the reason(s) for the recommendation on the AS Placement Report and send to the warden for approval, along with any pertinent information regarding the offense which was available to the board at the panel hearing. LIBD entries shall be completed as required in Section VI.(A)(2)(a) above. [That policy requires that a form entitled an Administrative Segregation Placement shall be initiated by the warden or designee clearly stating the reason(s) for the recommendation.]
>
> c. If the board has assessed a period of punitive segregation for the offense which resulted in the AS placement recommendation being made, that period of punitive segregation may be scheduled and served concurrently with the AS placement once the warden has approved the recommendation. The disposition shall be clearly noted on the AS Placement Report.
>
> d. Confidential information may be deleted from the inmate's copy, but a statement of reasons for the recommendation/action must be given. Any report or written summary containing information which is considered confidential as it relates to the procedures in Section VI.(A) shall be so marked and forwarded to the institutional internal affairs file . . . .

TDOC Policy # 404.10(VI)(A)(3).

The disciplinary board's recommendation is just that: a recommendation. Administrative segregation can only be imposed by the warden or his or her designee and only "when the warden determines an inmate's presence in the general population poses a serious threat to the security/safety

of the institution, staff, or other inmates." TDOC policy # 404.10(V).[3]

As the policies make clear, administrative segregation is not available as an additional punishment for a disciplinary offense. Instead, it is a non-punitive control mechanism. The warden has wide discretion to place an inmate in administrative segregation for reasons of security, safety, and prison management, and the courts are reluctant to second-guess the exercise of that discretion. When a disciplinary board recommends administrative segregation, that recommendation must be based upon similar reasons. Under TDOC policies, both the board, where applicable, and the warden must state in writing the reason for their respective actions.

## IV.  Due Process

A prisoner has no constitutional right to remain free of administrative segregation which is discretionary with prison officials because "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864 (1983). In *Hewitt*, the Court determined that the Due Process Clause, standing alone, did not confer a liberty interest in avoiding administrative segregation, by finding that there was no constitutional liberty interest in freedom from state action taken "within the sentence imposed." *Id*. 459 U.S. at 468, 103 S. Ct. at 869.  The Court recognized that prisoners retain only "the most basic liberty interests" and determined that remaining in the general population was not one of those basic interests and explained that because "inmates should reasonably anticipate receiving [administrative segregation] at some point in their incarceration," the Due Process Clause alone did not create a liberty interest. *Id*. 459 U.S. at 468-69, 103 S. Ct. at 869.

A state prison regulation also does not create a liberty interest in freedom from restraint unless that restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 575 U.S. at 485, 115 S. Ct. at 2301.  In *Sandin*, the Court found that the conditions of the disciplinary segregation at issue did not differ significantly from those of administrative segregation and that it had already determined, in *Hewitt*, that a prisoner had no liberty interest, created by the United States Constitution, in avoiding administrative segregation. The Court held that no such liberty interest arose from state statutes and regulations, regardless of their language, in segregation which was within typical restraints to be expected once one has been sentenced to prison.

As the Sixth Circuit has stated, "Administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration," *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998), and "After *Sandin*, a prisoner cannot argue that placement in administrative segregation is an 'atypical and significant hardship.'"

---

[3]Such determination may be reviewable by the disciplinary board in some circumstances, who may concur or not concur.  The warden may overrule a failure to approve by the board.  In that case, the warden must provide the inmate with a detailed written explanation.  TDOC Policy # 404.10(VI)(A)(2)(f).

*Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995). *See also Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (holding that fifteen months confinement in administrative segregation did not deprive the inmate of a liberty interest under *Sandin*); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997) (stating that "Almost 6 percent of the nation's prison inmates are in segregation and it appears that the great majority of these are not in disciplinary segregation; so even a prisoner who had committed a white-collar crime and had been assigned to the lowest security prison in the state's system might find himself in segregation for a nondisciplinary reason"); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (stating that "administrative segregation, without more, simply does not constitute deprivation of a protected liberty interest").

## V. Writ of Certiorari

Having determined that Mr. Woodruff possesses no liberty interest in freedom from placement in administrative segregation, we also find that he has failed to state a claim for issuance of the common law writ of certiorari on the basis the board or the Department acted illegally. *Willis v. Tenn. Dept. of Corr.*, No. M2000-01397-COA-R3-CV, 2002 Tenn. App. LEXIS 389, at *45-*46 (Tenn. Ct. App. June 5, 2002) (no Tenn. R. App. P. 11 application filed) (holding that the scope of the due process protections define the 'essential requirements of the law,' for writ of certiorari purposes, in prison disciplinary proceedings); *Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 Tenn. App. LEXIS 815, at 14-16 (Tenn. Ct. App. Nov. 2, 2001) (no Tenn. R. App. P. 11 application filed). Thus, Mr. Woodruff's claim that the failure to follow a procedural policy requiring written notice of the reasons for administrative segregation does not state a claim for relief under the common law writ of certiorari.[4]

However, his lawsuit raises concern over another basis for relief. His complaint that he was never furnished adequate reasons for his segregation also raises a question regarding the basis for that segregation. The common law writ of certiorari is available where there are sufficiently-pleaded allegations that the administrative decision-maker exceeded its jurisdiction or acted beyond its authority. The statutory grounds for grant of the writ are "where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally." Tenn. Code Ann. § 27-8-101. Courts have long recognized grounds for grant of the writ "if the board has exceeded its jurisdiction, or has otherwise acted unlawfully, arbitrarily or fraudulently." *Petition of Gant*, 937 S.W.2d 841, 844-45 (Tenn. 1996); *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990); *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000);

---

[4]In his reply brief, Mr. Woodruff also challenges the sufficiency of the evidence supporting the board's finding that he was guilty of possessing contraband. First, we note that the contraband charge did not result in the administrative segregation that Mr. Woodruff challenges in this appeal. Second, an allegation of sufficiency of the evidence is the equivalent of an attack on the correctness of the lower tribunal's decision, and courts are not authorized to inquire into correctness in a common law writ of certiorari action. *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999). It is true that the writ is justified if there is no material evidence in the record to support the finding of the lower tribunal. *Hoover v. Metropolitan Bd. of Zoning App.*, 294 S.W.2d 900, 904-5 (Tenn. Ct. App. 1996). Mr. Woodruff's pleadings themselves indicate there was evidence presented on the contraband charge.

*Powell*, 879 S.W.2d at 873.

The disciplinary board has no authority, or jurisdiction, to impose administrative segregation; it may only recommend. The warden has the sole authority to place an inmate in administrative segregation. The only evidence that Mr. Woodruff's placement in administrative segregation resulted from a decision by the warden is included in the warden's response to Mr. Woodruff's appeal, as follows, "After careful review, I find no reason to change the disposition, charge, or the punishment imposed."

As TDOC's policies make clear, administrative segregation is not an available sanction for a disciplinary violation. While a disciplinary hearing may result in a recommendation that administrative segregation be imposed, such recommendation must be based on the stated grounds which relate to safety and security, not additional punishment for the disciplinary offense. Similarly, the warden's discretion is to be exercised with reference to control and security issues. While we do not doubt that the warden could find that Mr. Woodruff's conduct, as proved at the disciplinary hearing, required his segregation for control or security purposes, we simply have no basis for concluding that the warden reached such a conclusion. The state of the record before us is such that it does not include the referenced "AS Placement" form or other record. While such a document or other documentation of the warden's decision and reasoning may exist, by deciding to respond with a motion to dismiss rather than filing the administrative record, the Department has not provided us with that documentation. Additionally, the Department has presented us with no authority for the proposition that it, the warden, or the board can impose administrative segregation as a punishment for a disciplinary offense.

The problem herein is not that the defendants have failed to follow a procedural policy requiring that written reasons be provided to the inmate. The problem is that the only reason appearing in the record before us does not meet the substantive requirements for placement in administrative segregation. It is not a matter of procedure; it is a matter of authority or jurisdiction. There is also an important practical distinction behind the differing purposes for administrative and punitive segregation. Punitive segregation is limited in duration. In the case before us, Mr. Woodruff alleges that the maximum term of punitive segregation that could have been imposed upon him, based on the charge and his institutional record, is twenty days. Administrative segregation, however, is unlimited in duration, subject to periodic reviews with increasing levels of justification. Consequently, indefinite administrative segregation should not be used as additional punishment beyond that authorized.

The cases cited above regarding a prisoner's lack of liberty interest in freedom from administrative segregation involve segregation which is nonpunitive. *See, e.g.*, *Rimmer-Bey*, 62 F.3d at 790 (explaining that "unlike detention, which is imposed as a form of punishment, administrative segregation is used as a method to physically separate from the general population those prisoners who for certain reasons cannot be placed in the general prison population"). It has been noted that courts should be aware of the consequences of the name given to a particular type of segregation.

8

. . . it makes little sense to hinge an individual's right to due process simply on the label prison officials choose to attach as the basis for the deprivation. Indeed, one of the reasons the Supreme Court rejected the 'mandatory language' analysis of *Hewitt* was because it had the 'undesirable effect' of discouraging States from codifying prison management procedures to avoid creating 'liberty' interests thereby 'conferring standardless discretion on correctional personnel.' Similarly, a due process analysis that would allow correctional personnel to avoid creation of 'liberty interests' by simply assigning misbehaving inmates to a segregated confinement unit for 'administrative' (as opposed to 'disciplinary') reasons seems to encourage the same 'standardless discretion' which the Supreme court found offensive in Sandin . . . Whatever [an inmate's] due process rights may be, they should not be extinguishable simply by virtue of the fact that the confinement was labeled by prison officials as 'administrative.'

*Jones v. Baker*, 155 F.3d at 816 (Gilman, J., concurring) (quoting *McClary v. Kelly*, 4 F. Supp.2d 195, 199 (W.D.N.Y. 1998)). Thus, there is an argument that the extent of a prisoner's due process rights cannot be determined without an accurate determination that the segregation at issue was properly "labeled." We need not reach that issue, however, because state law requires that the administrative decision-maker act within the authority given.

Because the Department has not filed the administrative record in this matter and, therefore, has provided neither the trial court nor this court any indication that the administrative segregation Mr. Woodruff was subjected to was for any reason other than as punishment, we conclude that Mr. Woodruff has stated a claim for relief and that the writ of certiorari should issue requiring the Department to file the record of the proceedings at the administrative level. After the record is filed, the trial court shall conduct the appropriate judicial review.

## VI. Equal Protection

Mr. Woodruff's petition for writ of certiorari contains one final allegation against the disciplinary board. He claims that the disciplinary board purposefully singled him out for more stringent punishment than that accorded to similarly situated prisoners in violation of his equal protection rights. Taking the allegations of the complaint as true, although Mr. Woodruff uses the "magic words" to allege violations of equal protection, his allegations are stated only as conclusions. He has not provided the court with any factual basis to support his claim of equal protection violations on the part of the board. For that reason, we affirm the decision of the trial court with respect to the dismissal of the claim for equal protection violations.

## VII. Default Judgment Against the Department

Mr. Woodruff filed a motion for default judgment with the trial court as a result of the Department's failure to answer the petition for common law writ of certiorari. The trial court denied the motion. On appeal, Mr. Woodruff alleges that the trial court was incorrect because the language

of Tenn. Code Ann. § 27-9-101 *et seq.* mandates the filing of a response to a petition for common law writ of certiorari within thirty (30) days from the filing of the petition.

In denying Mr. Woodruff's motion for default judgment, the trial court relied on Rule 55.04 of the Tennessee Rules of Civil Procedure, which states that "[n]o judgment by default shall be entered against the State of Tennessee or any officer of or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." *See also Northcott v. Tennessee Dep't of Corr.*, No. 01A01-9707-CH-00355, 1998 Tenn. App. LEXIS 277, at *5 (Tenn. Ct. App. Apr. 29, 1998) (no Tenn. R. App. P. 11 application filed). We affirm the trial court's denial of the motion for default judgment.

## VIII. Production of Documents

Mr. Woodruff filed a motion for production of documents asking the Department to produce several items relative to the administrative segregation placement and board procedures, including: (1) a certified copy of the administrative segregation placement form; (2) a certified copy of the LCLF stating the reason for placing Mr. Woodruff on administrative segregation; (3) a certified copy of the LIBD stating the reason for placing Mr. Woodruff on administrative segregation; and (4) a certified copy of the administrative review panel discussions. The trial court dismissed Mr. Woodruff's motion for production of documents as premature. The Department's motion to dismiss the suit for failure to state a claim under Tenn. R. Civ. P. 12.02(6) was pending at the time Mr. Woodruff filed the motion for production of documents.

The scope of discovery is within the sound discretion of the trial court. *State Dept. of Commerce & Ins. v. Firsttrust Money Serv. Inc.*, 931 S.W.2d 226, 230 (Tenn. App. 1996). The trial court did not abuse its discretion in denying the motion for production of documents as premature. At the time discovery was sought, there was pending a motion which would have disposed on the complaint as a matter of law. A motion to dismiss for failure to state a claim upon which relief can be granted presumes the truth of the factual allegations of the complaint. In that situation, postponement of discovery until the merits of the complainant's legal position are assessed is justified. In addition, judicial review of an administrative decision is confined to the record, absent specific allegations not present here. Further, most of the documents requested by Mr. Woodruff would have been contained in the administrative record which the Department would be required to file if the writ were granted. Therefore, it was entirely appropriate for the court to deny him discovery until the court determined whether the writ should be granted.

## IX. Conclusion

In summary, we affirm the decision of the trial court with respect to the motion for production of documents and the motion for default judgment. With regard to the Department's motion to dismiss, we affirm the trial court's holding that Mr. Woodruff failed to state a claim for relief under due process and equal protection. However, we reverse the dismissal because we find that Mr. Woodruff stated a claim for relief under common law writ of certiorari. The case is

remanded with direction to the trial court to issue the writ of certiorari and direct the filing of the record. Costs of this appeal are assessed to Tennessee Department of Correction, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE