IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 9, 2003 Session

## DONALD F. LONG v. TENNESSEE BOARD OF PROBATION AND PAROLE

**Direct Appeal from the Circuit Court for Maury County**
**No. 7856     Jim T. Hamilton, Judge**

_____

**No. M2003-00154-CCA-R3-CO - Filed February 18, 2004**

_____

The State appeals the trial court's grant of a petition for habeas corpus relief, arguing that the court acted without jurisdiction because the petitioner's sentence has not expired. Because the record reveals a parole violation warrant was issued and the petitioner declared delinquent before the expiration of his six-year sentence, we conclude that the trial court erred in granting the petition for habeas corpus. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Paul G. Summers, Attorney General and Reporter; and Elizabeth T. Ryan, Assistant Attorney General, for the appellant, State of Tennessee.

Claudia S. Jack, District Public Defender (on appeal); and John S. Colley, III, Columbia, Tennessee (at trial), for the appellee, Donald F. Long.

**OPINION**

**FACTS**

This case has a somewhat involved procedural history, which we must set out in some detail. In 1993, the petitioner, Donald F. Long, pled guilty in the Maury County Circuit Court to several nonviolent felonies, including burglary, aggravated burglary, theft, and forgery, in exchange for an effective six-year sentence in the Department of Correction. On November 14, 1994, while the petitioner was still in prison serving that sentence, an indictment was returned charging him with aggravated sexual battery for an offense that allegedly occurred in the fall of 1992. Although a

capias was apparently issued the following day ordering that the petitioner be brought to an arraignment on December 5, 1994, the capias was not served and the petitioner was not brought to court at that time.

On July 28, 1995, the petitioner was paroled and, from July to December 1995, reported as ordered to his parole officer, Donald Brewer. He last reported to Brewer on December 7, 1995. On December 27, 1995, the capias in the aggravated sexual battery case was finally served on the petitioner. On December 28, 1995, he was declared delinquent and a parole violation warrant was issued on a rescission charge, based on the aggravated sexual battery indictment of which the Board of Probation and Parole ("the Board") had been unaware at the time of the petitioner's release from prison. However, the parole violation warrant was not served on the petitioner at that time. According to the petitioner's testimony at the hearing on the habeas corpus petition, Brewer told him he would hold the warrant pending the outcome of the aggravated sexual battery case, and that the petitioner should not report back until contacted by Brewer. Because he was never again contacted by Brewer, the petitioner failed to report again.

On May 15, 1996, the petitioner's aggravated sexual battery charge was nolle prosequied by the State. On October 14, 1996, Brewer filed a follow-up parole violation report in which he requested that the rescission charge be dismissed from the parole violation warrant, due to the fact that the aggravated sexual battery charge had been nolle prosequied by the State, but that the warrant remain in place due to the petitioner's failure to report. From December 28, 1995, until October 14, 1996, Brewer filed regular status reports on the petitioner in which he stated that the petitioner had been declared delinquent on December 28, 1995, that his whereabouts were unknown, and that the parole violation warrant had not been served. Brewer left the parole office in 1996 or 1997 and supervision of the petitioner's case was assumed, in turn, by parole officers Gary Kotewa and Mark Mayes, who each also filed regular status reports stating that the petitioner had been declared delinquent, that his whereabouts were unknown, and that the parole violation warrant remained active with the Maury County Sheriff's Department but had not been served. Each of these follow-up reports listed the petitioner's parents' address as his last known address.

On October 31, 2001, the petitioner filed a petition for writ of habeas corpus in the Maury County Circuit Court, requesting "an Order prohibiting any law enforcement agency in the State of Tennessee from arresting and incarcerating" him on the parole violation warrant. On November 7, 2001, the petitioner was picked up on the December 1995 parole violation warrant, and on November 9, 2001, the trial court granted him bond pending his parole revocation hearing. The petitioner waived his preliminary parole hearing and notice of amended charges, and his parole revocation hearing was held on July 30, 2002. Following the hearing, the parole hearing officer recommended that the petitioner's parole be revoked based on the petitioner's failure to report. The Board accepted the recommendation and ordered the petitioner's parole revoked and his case reviewed in six months. The petitioner did not appeal the decision to the Board or to the Chancery Court of Davidson County.

On September 11, 2002, the trial court entered an order requiring the Board to produce the body of the petitioner for a hearing and to show what cause it had to further restrain him. At the October 28, 2002, habeas corpus hearing, the petitioner testified that he had reported, as ordered, to Parole Officer Brewer every two weeks following his release from prison until the aggravated sexual battery charge was brought against him, at which time Brewer told him to stop sending his money in, as it was creating problems, and not to report back until Brewer contacted him after the case "was cleared up." The conversation occurred over the telephone, and, to the petitioner's knowledge, there were no other witnesses besides himself and Brewer, who was now deceased. The petitioner testified the aggravated sexual battery charge was ultimately dismissed, but he never heard again from Brewer. He said he had lived with his parents at the same address, and had maintained the same telephone numbers and worked for the same employer, from the time he was released on parole through the time of the habeas corpus hearing, but no one from the parole office had ever contacted him, either at home or through his employer. The petitioner testified he did not learn the parole violation warrant was still outstanding until a police officer showed up at his house in 2001.

Mark Mayes, a parole officer with the Board, testified he took over the petitioner's case in 1999 from Gary Kotewa, who had succeeded Donald Brewer as the petitioner's parole officer. Mayes acknowledged that the petitioner's employment information, home address, and telephone numbers were included in his file, but testified he did not attempt to contact him until 2001, when he sat down to make out a list of his "absconders." Mayes testified the petitioner was served with the parole violation warrant on November 7, 2001, and made bond on November 9, 2001, which was highly unusual, as a parole violation is not a bondable offense. He said that, had the parole violation not occurred, the petitioner's sentence would have expired on April 9, 1999.

Mayes testified the serving of the parole violation warrant was within the province of the Maury County law enforcement authorities, rather than the parole office, and he had no knowledge of the reason for the long delay between the issuance of the warrant in 1995 and the serving of the warrant in 2001. He testified that Brewer filed a follow-up report, requesting changes to the warrant, in October 1996, in which he stated that the petitioner had failed to report to his parole officer and failed to provide verification of his substance abuse treatment. In his opinion, Brewer "wouldn't have done the follow-up charging parolee with not reporting if he had told him not to come in."

Mayes testified that, as required with all delinquent parolees, Brewer submitted regular follow-up reports on the petitioner's status to the Nashville office. According to the file, Brewer submitted reports on the petitioner in January, February, March, April, May, June, July, August, September, November, and December of 1996, and in January, February, March, April, May, June, July, and August of 1997. The record indicates the follow-up reports submitted by Brewer contained information that the petitioner had been declared delinquent, his whereabouts were unknown, and the warrant had not been served. Brewer testified Officer Kotewa filed similar reports on the petitioner in December 1997, March, July, and November of 1998, and February and June of 1999, at which point Mayes took over the case. In response to questioning by the trial court, Mayes acknowledged he made no attempts to contact the petitioner to ask why he was not reporting as

ordered, and there was no record in the petitioner's file of Brewer's having attempted to contact the petitioner.

The petitioner's counsel at the time of the habeas corpus hearing testified he began representing the petitioner in December 1995, after the parole violation warrant had been issued on the basis of the aggravated sexual battery charge. He said the State was slow to produce discovery in the sexual battery case, and, as a consequence, he subpoenaed Brewer to testify about the problems that was creating for the petitioner with respect to the parole violation warrant that was "hanging over his head." According to counsel's testimony, Brewer testified in court and "indicated that he would hold the warrant until [they] resolved this [aggravated sexual battery case] if we resolved it quickly." Counsel testified the aggravated sexual battery case was nolle prosequied in May 1996, and he spoke with Brewer on a regular basis from the time he began his representation of the petitioner until the case was dismissed. During that time, Brewer never asked him why the petitioner was not reporting for parole. He said the petitioner telephoned him several times during this period, asking if the warrant had been dismissed and whether he had heard from Brewer, and he told the petitioner he had not and to continue to work and stay out of trouble.

Edward Scudder, a staff attorney with the Board, testified parole violation warrants are issued by the Nashville office, not individual parole officers, and there is no procedure which would allow a parole officer to hold a warrant. His understanding was that the sheriff's department had lost the warrant in this case. Scudder said that, because parole violation is not a bondable offense, in the ordinary case a parolee charged with a violation of parole is taken into custody and given a preliminary hearing within fourteen days, followed by a final revocation hearing at a later date. In this case, however, the petitioner was released on bond and waived his preliminary hearing and notice of amended charges before being given a revocation hearing, at the conclusion of which the hearing officer recommended that his parole be revoked and his case reviewed in January 2003. Scudder testified that the Board voted to approve the hearing officer's recommendation, and the petitioner had not appealed the revocation to the Board's internal hearing officers or to the Chancery Court of Davidson County. However, since the petitioner had not been served with the "Board Action Sheet," the twenty-one-day period in which to appeal the decision to the Board had not yet begun to run.

On December 20, 2002, the trial court entered an order granting the petition for habeas corpus relief and declaring the petitioner's parole expired. The trial court accredited the testimony of the petitioner and his counsel that Brewer told the petitioner to stop reporting while his aggravated sexual battery case was pending, and failed to tell him to start reporting again after the case was dismissed. The trial court noted that neither Mayes nor any other parole officer made any attempts to contact the petitioner to get him to resume regular reporting, despite the fact that he lived at the same address and worked for the same employer throughout the relevant time period. The trial court also observed that the petitioner had led an "exemplary" life during the six years in which the parole violation warrant had been issued but not served. Of particular importance to the trial court was the violation of the petitioner's due process rights caused by the six-year delay in serving the warrant and the prejudice that resulted from the delay. The trial court's order states in pertinent part:

-4-

How had [the petitioner] been prejudiced by this six year delay in serving his warrant? The principal witness, Donald Brewer has died. [The petitioner] cannot now call him as a witness. [The petitioner] lived and worked in the same place he lived and worked when Donald Brewer was his parole officer. One more prejudice to [the petitioner] we all seem to forget: he has been a good citizen all of these years he has been on parole. He has not been convicted of any other criminal charges, he has maintained steady and regular employment and lived a stable good life at his parent's home on Riverside Drive in Columbia, Tennessee, less t[h]an two miles from the courthouse where he was convicted. That is what parole and probation are all about, a person picking up the pieces of a shattered life and living the life of a good productive citizen.

The Board and its officers have twice ignored the requirements of Tennessee and federal law in dealing with [the petitioner] -- in 1996 and again over the last year. While all the protections afforded to the criminal accused at trial are not available to the Petitioner, the state and federal constitutions and Tennessee statutes do require some semblance of orderly process in revoking or rescinding parole. Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); Blackmon v. Tennessee Board of Paroles, 29 S.W.3d 875, at 877 (Tenn. Ct. App. 2000); T.C.A. § 40-28-121. The plain language of the Tennessee Code contemplates a hearing within fourteen (14) days of the service of the warrant. T.C.A. § 40-28-121(c). For some unexplained reason, the Board of Paroles and its officers simply chose to ignore the Petitioner's rights to that semblance of orderly process, and thereby infringed upon his liberty interests identified in the cases cited above. Although a strict "speedy trial" analysis is not applicable to the case at bar, the Court cannot ignore the failure of the Board to furnish any reasonable or credible explanation for not comporting with basic concepts of due process in its attempt to rescind the Petitioner's parole. Similarly, the Court cannot overlook the minuscule cost to the Board of furnishing minimal due process to [the petitioner], and the prejudice he has suffered thereby. All of these circumstances are involved in any analysis of a purported due process violation. Phillips v. State Bd. of Regents, 863 S.W.2d 45, at 50 (Tenn. 1993).

The writ of habeas corpus has been oft described as "the great writ." This Court is empowered to grant such relief as to free citizens of the State of Tennessee from those restraints that are an affront to

our constitutions. The Board's procedures as applied to [the petitioner] constitute such an affront.

## ANALYSIS

The State contends the trial court lacked the jurisdiction to overturn the Board's revocation of the petitioner's parole, and that the petitioner is not entitled to habeas corpus relief because he failed to prove that his judgment of conviction is void or that his sentence has expired. The petitioner argues there was no credible evidence that he violated any of the conditions of parole. He contends, therefore, that his sentence has expired and the trial court acted within its jurisdiction under a writ of habeas corpus in ordering that he be released from the restraints of parole.

It is well-established in Tennessee that the remedy provided by a writ of habeas corpus is limited in scope and may only be invoked where the judgment is void or the petitioner's term of imprisonment has expired. State v. Ritchie, 20 S.W.3d 624, 629 (Tenn. 2000); State v. Davenport, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998); Passarella v. State, 891 S.W.2d 619, 626 (Tenn. Crim. App. 1994), superseded by statute as stated in State v. Steven S. Newman, No. 02C01-9707-CC-00266, 1998 WL 104492, at *1 n.2 (Tenn. Crim. App. Mar. 11, 1998). Moreover, the burden is on the petitioner to demonstrate by a preponderance of the evidence that he is entitled to habeas corpus relief. Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000). Because the determination of whether habeas corpus relief should be granted is a question of law, appellate review of a trial court's decision to grant habeas corpus relief is *de novo* with no presumption of correctness. Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000).

We agree with the State that the petitioner failed to prove that his sentence has expired. Tennessee Code Annotated section 40-28-122(a) (2003) provides in pertinent part:

> Whenever there is reasonable cause to believe that a parolee has violated parole and a parole violation warrant has been issued, the director of probation and parole may declare such parolee to be delinquent and the parolee will stop earning credit for service of the parolee's sentence from the date the warrant was issued until the removal of delinquency by the board.

The record reflects that a parole violation warrant was filed and the petitioner declared delinquent on December 28, 1995. Thus, the petitioner ceased earning credit on his sentence on that date. Consequently, his sentence has not expired and he has not stated a claim for habeas corpus relief.

We also agree with the State that the trial court lacked the authority to review the revocation decision of the Board. Exclusive jurisdiction for judicial review of an action of the Board of Probation and Parole lies with the Chancery Court of Davidson County through a writ of certiorari. See Norton v. Everhart, 895 S.W.2d 317, 319-20 (Tenn. 1995); Hopkins v. Tennessee Bd. of Paroles & Probation, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001); South v. Tennessee Bd. of Paroles, 946

-6-

S.W.2d 310, 311 (Tenn. Ct. App. 1996). Therefore, although we appreciate the trial court's credibility findings and its concern about the unfairness to the petitioner caused by the long delay between the issuance and service of the parole violation warrant, we must conclude that it erred in granting habeas corpus relief. The petitioner's proper avenue for relief is, first, to file for an administrative review of the Board's revocation decision and then, if necessary, to petition for a writ of certiorari in the Chancery Court of Davidson County.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE